UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HARRIS,

          Plaintiff,

v.

SANDCASTLE MEDIATION AND
MANAGEMENT LLC,
SHANE M. CIRINO,
MATTHEW JOHN MARCUCCI,
CORNERSTONE RESOLUTION GROUP INC.,
RICHARD WILLIAM CERRONE, and
PEGGY A. CERRONE,

          Defendants.

_____/

## COMPLAINT

### I.     Introduction

1.     This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

2.     Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones

1

operated by seemingly countless entities located in and around Los Angeles, California, Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable

from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this

complaint.

## II.     Jurisdiction

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper

because the pertinent events took place here.

## III.    Parties

7.      Plaintiff Timothy Harris is an adult, natural person residing in Kent County,

Michigan. Mr. Harris is a "consumer" and "person" as the terms are defined and used in the

FDCPA. Mr. Harris is a "person"as the term is defined and used in the DPPA. Mr. Harris is a

"consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant SandCastle Mediation And Management LLC ("SandCastle") is an

active Florida limited liability company, formed June 23, 2017, and doing business on Seneca

Street in Buffalo, New York. SandCastle does business under multiple unregistered, assumed

names, including SandCastle LLC, SandCastle Litigation,  SandCastle Mediation Services,

SandCastle Mediation and SandCastle Mitigation. Defendant Shane M. Cirino as a Managing

Member has filed documents on behalf SandCastle with the Florida Secretary of State, falsely

stating that the principal office for SandCastle is located at 401 East Jackson Boulevard, Suite

2340, Tampa, Florida 33602, when in fact, that address is merely a virtual office rented by

defendants from Opus Virtual Offices, LLC. The registered agent for SandCastle is Florida

Registered Agent LLC, 3030 North Rocky Point Drive, Suite 150A, Tampa, Florida 33607.

SandCastle uses interstate commerce and the mails in a business the principal purpose of which

is the collection of debts. SandCastle regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. SandCastle is a "debt collector" as the term is defined and used in the FDCPA. SandCastle is a "regulated person" as the term is defined and used in MRCPA. Alternatively, SandCastle is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.     On October 24, 2017, an agent for SandCastle registered through Tucows, Inc., the internet domain name www.sandcastlellc.com. The domain name links to an active internet website for SandCastle that states in pertinent part: "When all efforts have failed to solidify payment on past-due accounts, we are the 'GO-TO' agency." The internet website provides the following contact information for SandCastle: 401 East Jackson Street, Suite 2340, Tampa, Florida 33602, telephone number 888-441-1595. Defendants use the domain name to send and receive email from multiple email addresses, including paymentprocessing@sandcastlellc.com.

10.     On June 23, 2017, defendants also registered through Tucows, Inc., the internet domain name www.sandcastlemediationservices.com. The domain name does not link to an active internet website.

11.     Defendants have advertised on the internet, seeking to hire debt collector employees. One such advertisement that was published in or about October 2017 read as follows: "Collections Representative. SANDCASTLE MEDIATION SERVICES - Buffalo, NY 14210. $30,000 - $80,000 a year. WE AT SANDCASTLE MEDIATION SERVICES RUN A TIGHT SHIP. WE HAVE NEW PORTFOLIOS BEING PLACED EVERY 30 DAYS. WE HAVE A GREAT ENVIRONMENT AND ALLOW EMPLOYEES TO WORK OUR SYSTEM THAT IS PROVEN TO WORK. LOOKING FOR COLLECTORS AND POINT CALLERS......CALL TODAY 866-376-9861." Https://www.indeed.com/cmp/SANDCASTLE-MEDIATION-SERVICES/jobs/Collection-Representative-9f1209733ba22eb6?q=Sandcastle.

12.     The Better Business Bureau for West Florida, on a scale of A+ to F, gives
SandCastle a rating of "F." The BBB internet website contains consumer complaints stating that
SandCastle has engaged in the same unlawful debt collection practices that are described in this

13.     Defendants have used multiple telephone numbers to conduct their unlawful debt
collection scheme, including: 844-246-1040, 844-892-5855, 866-324-8981, 866-376-9861, 866-
442-2853, 888-220-5548 and 888-441-1595.

14.     Defendant Shane M. Cirino is a natural person, approximately age 47, purportedly
residing at 233 Oakhill Drive, Hamburg, New York 14075-4622 or 3580 Sowles Road,
Apartment 104, Hamburg, New York 14075-2611. . Mr. Cirino is an owner, officer, member,
manager, employee and agent of SandCastle. Mr. Cirino uses interstate commerce and the mails
in a business the principal purpose of which is the collection of debts. Mr. Cirino regularly
collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or
due another. Mr. Cirino is a "debt collector" as the term is defined and used in the FDCPA. Mr.
Cirino is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr.
Cirino is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

15.     Mr. Cirino (a) created the collection policies and procedures used by SandCastle
and its employees and agents, in connection with their common efforts to collect consumer debts,
(b) managed or otherwise controlled the daily collection operations of SandCastle, (c) oversaw
the application of the collection policies and procedures used by SandCastle and its employees
and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all
defendants and their employees and agents to collect debts from consumers, including the tactics
and scripts that were used to attempt to collect an alleged debt from Mr. Harris as stated in this
complaint, (e) ratified the unlawful debt collection practices and procedures used by all

6

defendants, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants, and their employees and agents in attempts to collect an alleged debt from Mr. Harris as stated in this complaint.

16.    Mr. Cirino directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Harris that are described in this complaint.

17.    Defendant Matthew John Marcucci is a natural person, age 44, likely residing at 4759 Brompton Drive, Buffalo, New York 14219-2963, which is a property owned by Mr. Marcucci's girlfriend, non-party Stacie M. Dispasquale. Mr. Marcucci also has resided at 443 South Ogden Street, Buffalo, New York 14206-3309 and 51 Dingens Street, Buffalo, New York 14206-2307. Mr. Marcucci is an owner, officer, member, manager, employee and agent of SandCastle. Mr. Marcucci uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Marcucci regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Marcucci is a "debt collector" as the term is defined and used in the FDCPA. Mr. Marcucci is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Marcucci is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

18.    Mr. Marcucci is an habitual criminal. In 1995, at the age of 22, Mr. Marcucci admitted participating in a scheme, cheating elderly victims out of money by posing as someone promising to recover money the victims had previously lost in other telemarketing scams. Mr. Marcucci pleaded guilty to one count of wire fraud before U.S. District Court Judge William M. Skretny. According to the records of the New York Department of Corrections, Mr. Marcucci may also have been incarcerated at various times for the following: Criminal Possession of a

Controlled Substance 4th - Admission Date 11/14/1997; Criminal Possession of a Controlled

Substance 4th - Admission Date 08/16/2001; and Burglary 3rd Degree - Admission Date

01/13/2006.

19.     Mr. Marcucci (a) created the collection policies and procedures used by

SandCastle and its employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of

SandCastle, (c) oversaw the application of the collection policies and procedures used by

SandCastle and its employees and agents, (d) drafted, created, approved and ratified the tactics

and scripts used by all defendants and their employees and agents to collect debts from

consumers, including the tactics and scripts that were used to attempt to collect an alleged debt

from Mr. Harris as stated in this complaint, (e) ratified the unlawful debt collection practices and

procedures used by all defendants, and their employees and agents in connection with their

common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in,

and ratified the unlawful debt collection practices used by all defendants, and their employees

and agents in attempts to collect an alleged debt from Mr. Harris as stated in this complaint.

20.     Mr. Marcucci directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Mr. Harris that are described in this complaint.

21.     Mr. Marcucci previously owned, operated and managed an entity named

Nationwide Arbitration Services, LLC ("NAS"), a New York limited liability company. On

November 6, 2014, a consumer named Cynthia Green filed a lawsuit against Mr. Marcucci, NAS

and others in the United States District Court for the Eastern District of Michigan, Case No.

2:14-cv-14280, alleging violations of the FDCPA based on the same unlawful debt collection

scheme that is described in this complaint. On November 30, 2015 the court in Case No. 2:14-cv-14280 entered judgment against Mr. Marcucci, NAS and the other named defendants, for damages in the amount of $105,000.00, plus attorney fees in the amount of $12,355.00 and costs in the amount of $400.00. Following entry of judgment, the plaintiff served Mr. Marcucci and NAS with post-judgment discovery. On November 11, 2017, the court found Mr. Marcucci and NAS to be in contempt of court for their repeated refusal to respond to the plaintiff's post-judgment discovery requests.

22.      Defendant Cornerstone Resolution Group Inc. ("CRG") is an active New York corporation (DOS ID # 3869721), formed on or about October 21, 2009. CRG also does business under various unregistered names, including CRG, CRG Inc. and CRG Processing. The registered agent for CRG is Spiegel & Utrera P.A. P.C., 1 Maiden Lane, 5th Floor, New York, New York 10038. CRG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CRG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CRG is a "debt collector" as the term is defined and used in the FDCPA. CRG is a "regulated person" as the term is defined and used in MRCPA. Alternatively, CRG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

23.      CRG has done business from multiple locations, including: 247 Cayuga Road, Suite 10, Buffalo, New York 14225-1900; 2265 George Urban Boulevard, Depew, New York 14043-1921; 2560 Walden Avenue, Buffalo, New York 14225-4757; and 8080 Cole Road, Colden, New York 14033-9731 (which is the residence of defendants Richard William Cerrone and Peggy A. Cerrone).

24.     CRG and its employees and agents have used multiple telephone numbers to conduct their unlawful debt collection scheme, including: 716-206-0110, 716-566-6568 (fax), 800-903-9654, 855-259-7303, 855-969-0613 and 888-649-9025.

25.     On April 12, 2016, an agent for CRG registered through Tucows, Inc., the internet domain name www.cornerstoneresolutiongroup.com. The domain name links to an active internet website for CRG that states in pertinent part: "Cornerstone Resolution Group has years of experience in helping businesses, like yours, manage their receivables and collect the funds rightfully owed to their company."

26.     The Better Business Bureau for Upstate New York, on a scale of A+ to F, gives CRG a rating of "D-," and the consumer complaints shown on the BBB internet website describe the same unlawful debt collection tactics that are alleged by Mr. Harris in this complaint.

27.     CRG directly and indirectly participated in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

28.     Defendant Richard William Cerrone, also known as Rick Cerrone, is a natural person, age 55, purportedly residing at 8080 Cole Road, Colden, New York 14033-9731. Mr. Cerrone is the husband of defendant Peggy A. Cerrone. Mr. Cerrone is an owner, officer, manager, employee and agent of defendant CRG. Mr. Cerrone uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cerrone regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cerrone is a "debt collector" as the term is defined and used in the FDCPA. Mr. Cerrone is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Cerrone is a "collection agency" and "licensee" as the terms are defined and

used in the MOC.

29.    Mr. Cerrone (a) created the collection policies and procedures used by SandCastle and CRG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CRG, (c) oversaw the application of the collection policies and procedures used by CRG and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by SandCastle and CRG, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Harris as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SandCastle and CRG, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SandCastle and CRG, and their employees and agents, in attempts to collect an alleged debt from Mr. Harris as stated in this complaint.

30.    Mr. Cerrone directly and indirectly participated in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

31.    Defendant Peggy A. Cerrone is a natural person, age 52, purportedly residing at 8080 Cole Road, Colden, New York 14033-9731. Mrs. Cerrone is the wife of defendant Richard William Cerrone. Mrs. Cerrone is an owner, officer, manager, employee and agent of defendant CRG. Mrs. Cerrone uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mrs. Cerrone regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mrs. Cerrone is a "debt collector" as the term is defined and used in the FDCPA. Mrs. Cerrone is a "regulated person" as

the term is defined and used in the MRCPA. Alternatively, Mrs. Cerrone is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

32.     Mrs. Cerrone (a) created the collection policies and procedures used by SandCastle and CRG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CRG, (c) oversaw the application of the collection policies and procedures used by CRG and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by SandCastle and CRG, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Harris as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SandCastle and CRG, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SandCastle and CRG, and their employees and agents, in attempts to collect an alleged debt from Mr. Harris as stated in this complaint.

33.     Mrs. Cerrone directly and indirectly participated in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

34.     On February 18, 2011, New York Attorney General Eric T. Schneiderman announced the settlement of multiple actions against Buffalo-based debt collectors who threatened consumers, made false representations, and improperly called consumers at their places of employment, including the following: "Richard & Peggy Cerrone, are required to pay $85,000 in penalties and must take significant steps to clean up their business practices. Richard

Cerrone owns and operates the Southern Tier Agency, Inc., Check & Credit Reporting, Inc., and Credit & Check Filing, Inc. Peggy Cerrone owns and operates the Cornerstone Resolution Group, Inc. The Investigation revealed the Cerrone companies repeatedly violated the Federal Fair Debt Collection Practices Act. On more than 30 occasions consumers have filed suit against the Cerrone companies. Moreover, consumers have submitted more than 200 complaints to the Federal Trade Commission, the Better Business Bureau, and the OAG against the Cerrones companies. The lawsuits and complaints allege that the Cerrone Companies improperly called consumers at their places of employment, threatened consumers with arrest, imprisonment, garnishment of wages, and freezing bank accounts."

35.     Non-party Capital Recovery Services Group, LLC is ("CRSG") is a New York limited liability company (DOS ID # 2945840), formed August 22, 2003. CRSG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CRSG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CRSG is a "debt collector" as the term is defined and used in the FDCPA. CRSG is owned, operated and managed by defendant Richard William Cerrone. It will need to be determined in discovery whether CRSG participated, directly or indirectly, in the in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

36.     Non-party Check & Credit Reporting Inc. ("CCR") is a New York corporation (DOS ID # 3709344), formed August 14, 2008. CCR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CCR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CCR is a "debt collector" as the term is defined and used in the FDCPA. CCR is owned,

operated and managed by defendant Richard William Cerrone. It will need to be determined in discovery whether CCR participated, directly or indirectly, in the  in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

37.     Non-party Account Relations Group Corp. ("ARGC") is a Florida corporation, formed November 6, 2009. According to documents filed by ARGC with the State of Ohio, ARGC provides "payment processing services" for debt collectors. ARGC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ARGC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ARGC is a "debt collector" as the term is defined and used in the FDCPA. ARGC is owned, operated and managed by defendant Richard William Cerrone. It will need to be determined in discovery whether ARGC participated, directly or indirectly, in the  in the efforts to collect an alleged debt from Mr. Harris that  are described in this complaint.

38.     Non-party National Account Management Inc. ("NAM") is a New York corporation (DOS ID # 4265790), formed July 2, 2012. NAM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NAM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NAM is a "debt collector" as the term is defined and used in the FDCPA. NAM is owned, operated and managed by defendant Richard William Cerrone. It will need to be determined in discovery whether NAM participated, directly or indirectly, in the  in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

39.     Non-party Financial Processing and Reporting, Inc. ("FPR") is a Florida corporation, formed February 25, 2013. According to documents filed by FPR with the State of

Florida, "This is a company that deals with Payday loans Collections. We try to collect payments on past due accounts." According to documents filed by FPR with the State of Ohio, FPR became licensed in Ohio for the following purpose: "Phone calls to consumers on past due debts." FPR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. FPR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. FPR is a "debt collector" as the term is defined and used in the FDCPA. FPR is owned, operated and managed by defendant Richard William Cerrone. It will need to be determined in discovery whether FPR participated, directly or indirectly, in the  in the efforts to collect an alleged debt from Mr. Harris that are described in this complaint.

40.     All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

41.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th

Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL

1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

     42.     A shareholder, owner, officer, member, manager, employee or agent of a

corporate debt collector can be held liable for violating the FDCPA, without piercing the

corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.**    **Facts**

     43.     Defendants claim that plaintiff Timothy Harris (a) obtained a Bon Ton Elder-

Beerman credit card account through Comenity Bank, Account No. 1111010100777950, (b) used

the account to purchase goods and services, (c) failed to repay his debt related to the account, and

(d) became in default.

     44.     Mr. Harris states that if he did open and use the described account, anything he

purchased with the account was purchased for personal, family and household purposes.

     45.     Mr. Harris denies owing any money to any entity in connection with the alleged

account. Mr. Harris refuses to pay any money to any entity in connection with the alleged account.

46.     Mr. Harris states that defendants stole Mr. Harris's account information and personal financial information, or otherwise acquired Mr. Harris's stolen account information and personal financial information, and then used that information to attempt to extort the payment of money from Mr. Harris on an alleged account and alleged debt that Mr. Harris does not owe and that defendants have no right to collect.

47.     On January 17, 2018, defendants' employee and agent placed a telephone call to Mr. Harris's cellular telephone and left a message on Mr. Harris's voice mail: "Hi Mr. Harris, my name is Nicole Smith. I'm calling from SandCastle Litigation. I'm calling in regards to a case I recently took on retainer and in which you have been named as sole defendant. I have left several messages and have yet to hear back from you or your legal counsel. I do have a scheduled filing date for this coming Friday, January 19. So if you could give me a call, or have your attorney do so immediately, I would appreciate it. My telephone number is 888-441-1595. My extension 408. Thank you."

48.     On January 17, 2018, Mr. Harris placed a return call to telephone number 888-441-1595. The call was answered by defendants' female employee and agent with the words "SandCastle Litigation." Mr. Harris asked to speak with Nicole Smith at extension 408. Mr. Harris was transferred to defendants' employee and agent who stated that her name was "Nicole Smith" and that she was a "Paralegal" with "SandCastle Litigation." Defendants' employee and agent began by reciting to Mr. Harris the last four digits of his social security number, his date of birth, his residential address, and his wife's cellular telephone number. In the ensuing

17

conversation, defendants' employee and agent made the following statements to Mr. Harris:

    a)    SandCastle Litigation had been retained to file a lawsuit against Mr. Harris to collect an unpaid credit card debt.

    b)    Mr. Harris owed $1,216.74, but SandCastle Litigation had authority to waive finance charges, costs and attorney fees, and could settle the account for an immediate payment of $869.41.

    c)    Mr. Harris was required to appear for a hearing in court in two days (January 19, 2018), and that an "Execution Order for Judgment to Enter" was going to be entered by the court on February 1, 2018.

Mr. Harris stated that he and Mrs. Harris have impeccable credit, that he had no recollection of the supposed unpaid account, and that he wanted to dispute the debt until he had an opportunity to speak with Mrs. Harris about the matter and review their paperwork at home. Hearing that, defendants' employee and agent transferred Mr. Harris to defendants' employee and agent who stated that his name was "Justin Alfieri" and that he was an "Attorney" with SandCastle Litigation. In the ensuing conversation, defendants' employee and agent made the following statements to Mr. Harris:

    d)    SandCastle Litigation had been retained to file a lawsuit against Mr. Harris to collect an unpaid credit card debt.

    e)    Mr. Harris owed $1,216.74, but SandCastle Litigation had authority to waive finance charges, costs and attorney fees, and could settle the account for an immediate payment of $869.41.

    f)    Mr. Harris was required to appear for a hearing in court in two days

18

(January 19, 2018), and that an "Execution Order for Judgment to Enter"

was going to be entered by the court on February 1, 2018.

Mr. Harris asked defendants' employee and agent to provide Mr. Harris with documentation

regarding the supposed unpaid account so that he could review the matter with Mrs. Harris.

Defendants' employee and agent agreed to email the requested documentation to Mr. Harris and

that he would put a "temporary stay on the filing" for two days.

49.     On January 17, 2018, defendants used the address processing@sandcastlellc.com

to send an email to Mr. Harris. Attached to the email was a one-page letter dated January 17,

2018, on the letterhead of SandCastle LLC, claiming that Mr. Harris owed $869.41 on the Bon

Ton Elder-Beerman credit card account, and warning Mr. Harris that "You must pay **$869.41 on**

**1/17/2018**. This is a ***"ONE-TIME"*** opportunity for you to take care of this obligation voluntarily.

If payment/payments are not received this offer will be nullified at which time you will be

pursued for the **FULL** balance plus ***any/all additional attorney and court cost*** that our company

incurs in the process." The document also states: **Payment Processed By:** CRG Processing."

The letter contains metadata stating the letter was written by defendant Matthew Marcucci on

January 17, 2018 at 2:00 p.m. A copy of the email, letter, and related metadata are attached

hereto as Exhibit A.

50.     On or about January 18, 2018, defendants' employee and agent placed a telephone

call to Mr. Harris's cellular telephone and left a message on Mr. Harris's voice mail: "This is

Nicole calling from SandCastle Litigation. I'm calling in regards to the civil complaint that has

been filed here in our office. We went ahead and sent you out the letter you requested on January

17 around 2:00 p.m. That offer does expire today so you need to give me a call or have your

attorney do so immediately. My telephone number is 888-441-1595. My extension is 408."

51. On January 26, 2018, Mr. Harris placed a call to defendants at 888-441-1595. The call was answered by defendants' employee and agent who stated that his name was Jason Nickels with SandCastle Litigation. In the ensuing conversation, defendants' employee and agent made the following statements to Mr. Harris:

a)  "I sent you an offer for voluntary restitution in the amount of $869.41."

b)  "This was your Bon Ton Elder-Beerman credit card account. You were paying on this up until October 7th of 2015, when you made a $20.00 payment and then clearly you had an agreement with the collection agency, you made a payment of $20.00 and they said that you defaulted on the payment agreement, and therefore they went ahead and forwarded it out to collections. So it sat in collections for quite some time prior to the client actually retaining our services to go ahead and pursue legal action on this. So the reason I am guessing that Nicole called you, is that the client is requesting that we petition the court for a judgment against you for the balance in full plus attorney costs and court costs. Just so you are aware of that. They're not just suing you for the balance in full, but also for legal expenses."

c)  "When we sign a legal retainer to represent our client for litigation, we do charge them a $1,500.00 retainer fee and we bill them a rate of $250.00 an hour. Usually by the time we solidify judgment we can be from anywhere between twelve hours to in the neighborhood of around twenty, so it

20

fluctuates from case to case. Really, it is all dependent on the amount of documentation we need to get to present our case. Judges are very adamant about showing everything in black and white, and that's basically what it comes down to is us making sure we have the documentation where we feel comfortable enough to allow us to get a favorable outcome."

d)   "I guess you spoke to Nicole some time about a week and a half ago and she submitted, for whatever reason, she did submit a request a hardship settlement request to the client to have them remove the interest and penalties and was able to get it down to that $869.00 and change for you. But if that's not something that you plan on addressing in a voluntary basis, you totally have the option to go ahead and obviously have your day in court to argue your case as well."

e)   "The original account number is 1111-0101-0077-7950."

f)   "As soon as you make the payment today you'll get two things. You'll get a paid in full letter saying that the account has been paid, and then you'll get a DocuSign. The DocuSign is basically like a receipt you would get if you went to the store and used your credit card. It's basically going to have your card information on there. Payment date, payment amount. You're just going to open up that email, you're going to sign it, date it, and return it to use. You don't physically sign it and date it , it's something that is all done electronically."

52.   On January 26, 2018, in response to the above-quoted statements and threats made

by defendants' employees and agents, Mr. Harris agreed to pay money to defendants by debit

card, for the sole purpose of identifying and locating the anonymous entities who had obtained

Mr. Harris's stolen personal and financial information and had used that information to

communicate with Mr. Harris in efforts to coerce the payment of money from Mr. Harris with

false threats of litigation. While Mr. Harris waited on hold, defendants debited Mr. Harris's

payment of $100.00.  According to JPMorgan Chase Bank, N.A., the entity who debited the

payment was "CRG INC." in Buffalo, New York, with a telephone number of 855-969-0613,

which is a telephone number  that has been used by defendant Cornerstone Resolution Group Inc.

to collect debts.

53.     On January 26, 2018, defendants used the address processing@sandcastlellc.com

to send an email to Mr. Harris. Attached to the email was a one-page letter dated January 26,

2018, on the letterhead of SandCastle LLC, claiming that Mr. Harris owed $869.41 on the Bon

Ton Elder-Beerman credit card account, and warning Mr. Harris that "You must pay **$100.00 on

1/26/2018 and 769.41 on 2/2/2018**. This is a ***"ONE-TIME"*** opportunity for you to take care of

this obligation voluntarily. If payment/payments are not received this offer will be nullified at

which time you will be pursued for the **FULL** balance plus ***any/all additional attorney and court

cost*** that our company incurs in the process." The document also states: **Payment Processed By:**

CRG Processing." The letter contains metadata stating the letter was written by defendant

Matthew Marcucci on January 26, 2018 at 2:27 p.m. A copy of the email, letter, and related

metadata are attached hereto as Exhibit B.

54.     The above-described threats and representations made by defendants and

defendants' employees and agents were false and part of a scripted and unlawful debt collection

practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

55.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

56.     Defendants and their employees and agents failed to identify the current owner of the alleged debt.

57.     Defendants and their employees and agents falsely represented and falsely implied that there were legal claims pending against Mr. Harris.

58.     Defendants and their employees and agents falsely represented and falsely implied that a civil lawsuit had been filed against Mr. Harris to collect the alleged debt.

59.     Defendants and their employees and agents falsely represented and falsely implied that a court hearing was scheduled in a civil lawsuit had been filed against Mr. Harris to collect the alleged debt.

60.     Defendants and their employees and agents falsely represented that lawyers were involved in the efforts to collect money from Mr. Harris.

61.     Defendants and their employees and agents falsely represented and falsely implied that defendants are a law firm.

62.     Defendants and their employees and agents falsely represented that they are paralegals and lawyers.

63.     Defendants and their employees and agents falsely represented and falsely implied

that they had the right to collect the alleged debt, when in fact defendants had stolen the account and Mr. Harris's personal financial information, or had otherwise acquired the stolen account and Mr. Harris's stolen personal financial information.

64.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Harris owes a debt that he does not owe.

65.     Defendants and their employees and agents falsely represented the amount of the alleged debt.

66.     Defendants and their employees and agents falsely represented and falsely implied that they were a law firm "retained" by the owner of the alleged debt to file a lawsuit against Mr. Harris to collect the alleged debt.

67.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Harris did not pay money to defendants, then a court would enter a judgment against Mr. Harris for thousands of dollars in principal, interest, attorney fees and court costs.

68.     Defendants did not intend to file a lawsuit against Mr. Harris in any Michigan court in efforts to collect the alleged debt.

69.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

70.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

71.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

24

72.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

73.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

74.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

75.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

76.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

77.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

78.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

79.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

80.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

81.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

82.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

83.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

84.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

85.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

86.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

87.     Defendants and their employees and agents failed to timely send to Mr. Harris a notice containing the information required by 15 U.S.C. § 1692g(a).

88.    Each defendant and each defendant's employees, managers, members, officers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

89.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

90.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

91.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

92.    In connection with efforts to collect an alleged debt from Mr. Harris, defendants obtained personal information regarding Mr. Harris from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

93.    Alternatively, in connection with efforts to collect an alleged debt from Ms. Lynch, defendants obtained personal information regarding Mr. Harris from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

94.     The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information. A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

95.     The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information. A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

96.     The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

97.     The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

28

18 U.S.C. § 2722.

98.     The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

99.     The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

100.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

101.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Harris.

102.    Defendants used Accurint or TLO to obtain, disclose and use personal information regarding Mr. Harris.

103.    Defendants made a false representation to Accurint or TLO to obtain personal information regarding Mr. Harris that was derived from Mr. Harris's motor vehicle record.

104.    Alternatively, the entity that obtained Mr. Harris's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Mr. Harris that was derived from Mr. Harris's motor vehicle record.

105.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

29

106.    Defendants knowingly obtained, disclosed and used Mr. Harris's personal information, from a motor vehicle record, for the purpose of engaging in their scam to coerce the payment of money from Mr. Harris through multiple false threats, including false threats of litigation.

107.    Defendants knowingly obtained, disclosed and used Mr. Harris's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

108.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Harris's personal information obtained from Accurint or TLO.

109.    No defendant had Mr. Harris's consent, permission, authorization or waiver to obtain Mr. Harris's personal information from Accurint or TLO.

110.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

111.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

112.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

113.    Each defendant knew, or should have known, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

114.    Each defendant shared Mr. Harris's personal and private financial information

among the other defendants, knowing that the other defendants would engage in the unlawful debt collection practices that are described in this complaint.

115.    Each defendant owed a duty of care to Mr. Harris, not to obtain and not to share Mr. Harris's personal and private financial information with entities that each defendant knew or should have known had no right to possess the information and that each defendant knew or should have known would use that information to attempt to unlawfully coerce the payment of money from Mr. Harris. Each defendant breached the duty of care owed to Mr. Harris.

116.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

117.    Plaintiff incorporates the foregoing paragraphs by reference.

118.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted

collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

119.      Plaintiff incorporates the foregoing paragraphs by reference.

120.      Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

f)      An order requiring defendants to provide plaintiff with the name, address and

other information, sufficient for plaintiff to identify the entity or entities from
which defendants obtained plaintiff's personal information, pursuant to 18 U.S.C.
§ 2724(b)(4);  and

g)    An injunction prohibiting defendants from disseminating plaintiff's personal
information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

121.    Plaintiff incorporates the foregoing paragraphs by reference.

122.    Each defendant has violated the MRCPA.  Each defendant's violations of the
MRCPA include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,
untrue, or deceptive statement or claim in a communication to collect a debt;

b)    Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the
purpose of a communication when it is made in connection with collecting a debt;

c)    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication
with a debtor the following: (i) the legal status of a legal action being taken or
threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the
nonpayment of a debt will result in the debtor's arrest or imprisonment, or the
seizure, garnishment, or sale of the debtor's property;

d)    Defendants violated M.C.L. § 445.252(g) by communicating with a debtor
without accurately disclosing the caller's identity;

e)    Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or
abusive method to collect a debt; and

33

f)   Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 445.257(2);

b)   Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)   Statutory damages pursuant to M.C.L. § 445.257(2);

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)   Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

123.   Plaintiff incorporates the foregoing paragraphs by reference.

124.   Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)   Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)   Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

d)   Defendants violated M.C.L. § 339.915(g) by communicating with a debtor

34

without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

abusive method to collect a debt;

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

g)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 5 – Invasion of Privacy

125.    Plaintiff incorporates the foregoing paragraphs by reference.

126.    Defendants' acts and omissions were undertaken willfully, maliciously,

intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

127.    Defendants' acts and omissions were extreme and outrageous.

128.    Defendants' acts and omissions have caused plaintiff's personal and

financial information to be peddled around the country to other con men and criminals, exposing

plaintiff to repeated and future harm, credit identity theft, and other invasions of plaintiff's

privacy.

129.    As an actual and proximate result of defendants' invasion of plaintiff's right to

privacy, plaintiff has suffered, and will continue to suffer, actual damages for which plaintiff should be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

a)   Actual damages;

b)   Exemplary damages;

c)   Equitable relief, including an injunction, enjoining defendants from communicating plaintiff's personal information to any entity;

d)   Costs and reasonable attorney's fees; and

e)   Such further relief as the court deems just and proper.

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: February 12, 2018                    /s/ Phillip C. Rogers
                                             Phillip C. Rogers (P34356)
                                             Attorney for Plaintiff
                                             6140 28th Street SE, Suite 115
                                             Grand Rapids, Michigan 49546-6938
                                             (616) 776-1176
                                             consumerlawyer@aol.com